**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| KENYA T. ALLEN, | | |
| | * | |
| **Plaintiff,** | | |
| | * | |
| v. | | **Case No.: PWG-15-1817** |
| | * | |
| DISCOVERY COMMUNICATIONS, | | |
| LLC, | * | |
| | | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenya T. Allen[1] worked as an Operation Specialist, processing sales for Defendant Discovery Communications, LLC ("Discovery") for eleven years.  Am. Compl. ¶¶ 6–7, ECF No. 15.  According to Allen, her supervisor Stephanie Timberlake created a hostile work environment in 2010 and Discovery did nothing in response to Plaintiff's complaint about Timberlake, which led to Allen having to take medical leave.  *Id.* ¶¶ 10–11.  When she returned, Timberlake "took away her major accounts," and she had a "drastic decrease in her sales numbers."  *Id.* ¶ 12.  Thereafter, Timberlake monitored her performance, while not monitoring the performance of a male with similar sales numbers.  *Id.* ¶¶ 15–16.  Allen complained to the Human Resources department and then took a second medical leave.  *Id.* ¶¶ 16–24.  This time when she returned, she was presented with a performance improvement plan and, within weeks, terminated. *Id.* ¶¶ 27–38.

---

[1] Plaintiff identifies herself in the Caption of her Amended Complaint as "Kenya T. Allen" and in the body of the Amended Complaint as "Kenyatta T. Allen."  ECF No. 15.

She filed suit against her former employer, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code. Ann., State Gov't §§ 20-601 *et seq.* Am. Compl.   Allen also claims that Discovery failed to provide reasonable accommodations for her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 – 12213, and the MFEPA. *Id.* Discovery has moved to dismiss for lack of subject matter jurisdiction and failure to adequately plead claims. Def.'s Mot., ECF No. 16.[2] Because Allen has not shown that she filed a verified charge with the Equal Employment Opportunity Commission ("EEOC"), her sex discrimination and failure to accommodate claims will be dismissed.  I find that Plaintiff has stated valid claims for retaliation, and I will not dismiss those claims.

## STANDARD OF REVIEW

When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as Defendant does here for failure to exhaust administrative remedies, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013).  Thus, "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir.

---

[2] Both parties have fully briefed the motion. ECF Nos. 16-1, 17, 18. A hearing is not necessary. *See* Loc. R. 105.6.

2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting *Kerns*, 585 F.3d at 192).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Notably, although at this stage of the proceedings, I accept the facts as alleged in Allen's Amended Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, I "may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566

F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

"'[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.'" *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)). "Modeled after Title VII . . . , the ADA incorporates that statute's enforcement procedures, including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (citations omitted). The MFEPA also "follow[s] the procedural requirements of Title VII," including the administrative exhaustion requirement. *See Garey v. Wal-Mart Stores East, LP*, No. MJG-15-778, 2016 WL 1642945, at *2 (D. Md. Apr. 26, 2016).

To exhaust her administrative remedies for Title VII and ADA purposes, Allen must "bring [] a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Under the MFEPA, she may exhaust her administrative remedies by filing a complaint with either the Maryland Commission on Human Relations or "'[a] complaint with a federal or local human relations commission within 6 months after the date on which the alleged discriminatory act occurred.'"

*Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 778 (D. Md. 2010) (quoting Md. Code Ann., State Gov't § 20–1004(a), (c)).  Here, the charge that Allen attached to her Amended Complaint is an EEOC Charge of Discrimination ("EEOC Charge").  Am. Compl. Ex. 8.[3]

A claimant does not exhaust his or her administrative remedies simply by filing a charge. The claimant must provide "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of."  29 C.F.R. §1601.12(b).  Additionally, the charge must be timely filed *and verified*, that is, the complainant must "affirm or swear that the allegations are true."  *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 108–09 (2002) (citing 42 U.S.C. § 2000e-5(b), (e)(1)); *see Merchant's v. Prince George's Cnty.*, 948 F. Supp. 2d 515, 520 (D. Md. 2013) (citing 29 C.F.R. § 1601.9, which provides that a Title VII charge "shall be in writing and shall be verified").  "The verification requirement has the. . . object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury."  *Edelman*, 535 U.S. at 113.

The verification requirement "is a mandatory prerequisite to the validity of the charge." *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir. 1994); *Merchant's*, 948 F. Supp. 2d at 520 (same).  In the Fourth Circuit, failure to comply with § 2000e-5(b)'s verification requirement "is fatal to an action seeking relief under Title VII."  *Balazs*, 32 F.3d at 156; *see Merchant's*, 948 F. Supp. 2d at 520 (same).  Therefore, even though in its argument that Allen failed to exhaust her administrative remedies, Discovery did not address the verification requirement, I will consider it *sua sponte*.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action.").

[3] Allen's Exhibits to her Amended Complaint all appear as one electronic document, ECF No. 15-1.

Allen insists that she has exhausted all administrative remedies by filing a charge with the EEOC and receiving a right to sue letter prior to filing her Complaint with this Court.  Pl.'s Opp'n 2.   Along with her EEOC Charge, she attached the EEOC Notice of Charge of Discrimination ("Notice of Charge") to her Amended Complaint.  Am. Compl. Ex. 8.  The EEOC Charge is signed by a notary, but Allen's signature does not appear on it.  *Id.*  Notably, the signature boxes that state "I declare under penalty of perjury that the above is true and correct" and "I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief" are unsigned.  *Id.* The Notice of Charge, which is signed by Acting Director Judy Cassell, states that "a perfected charge will be forwarded to [Allen] for a complete response."  *Id.*  Allen did not attach a perfected charge, although she did attach the EEOC Dismissal and Notice of Rights, which states that "the EEOC is closing its file on this Charge," notified Allen of her right to file suit in federal or state court, and is signed by Director Rosemarie Rhodes.  Am. Compl. Ex. 10.

Thus, Allen's EEOC Charge is neither signed by Allen nor verified. *See* EEOC Charge. Consequently, it is insufficient in and of itself to exhaust administrative remedies because it is not signed by Plaintiff under oath or affirmation.  *See Edelman*, 535 U.S. at 108–09 (stating that "*complainant* must affirm or swear that the allegations are true" (emphasis added)); *Balazs*, 32 F.3d at 156; *Merchant's*, 948 F. Supp. 2d at 520.  Certainly, an unverified charge may be verified at a later date and that verification will relate back to the date of filing of the unverified charge. *See Edelman*, 535 U.S. at 109; *see id.* at 113 (noting that the purpose of the verification requirement "demands an oath only by the time the employer is obliged to respond to the charge, not at the time an employee files it with the EEOC"); *Merchant's*, 948 F. Supp. 2d at 520 ("An unverified document that satisfies the other substantive requirements for a charge can be cured

by a later-filed charge that is verified, in which case the verified charge relates to the filing date

of the unsworn charge."). But, as noted, Allen did not attach the perfected charge that the Notice

of Charge stated she would receive. Nor did she attach any later filing under oath or affirmation

to verify the EEOC Charge. Therefore, she has not exhausted her administrative remedies to be

able to maintain a sex discrimination or failure to accommodate claim in this Court. *See*

*Edelman*, 535 U.S. at 108–09; *Merchant's*, 948 F. Supp. 2d at 520. Consequently, her sex

discrimination and failure to accommodate claims under Title VII, the ADA, and the MFEPA,

Counts I, II, V, and VI, must be dismissed.[4] *See Evans*, 166 F.3d at 647; *Balazs*, 32 F.3d at 156;

*Merchant's*, 948 F. Supp. 2d at 520; Fed. R. Civ. P. 12(b)(1).

## FAILURE TO STATE A CLAIM FOR RETALIATION

"'[A] plaintiff may raise [a] retaliation claim for the first time in federal court[.]'" *Jones*

*v. Calvert Grp. Ltd.*, 551 F3d 297, 302 (4th Cir. 2009) (quoting *Nealon v. Stone*, 958 F.2d 584,

590 (4th Cir. 1992)). Therefore, Allen's retaliation claims are not subject to dismissal on

exhaustion grounds. To state a claim for retaliation under Title VII or the MFEPA,[5] a plaintiff

---

[4] Plaintiff may be able to cure her failure to file a verified complaint if she can establish that she subsequently filed a verification during the time that her claim was still pending before the EEOC. Therefore I will not dismiss these claims with prejudice, but note that she cannot salvage these claims by taking action to verify the charges at this late juncture. The Fourth Circuit has held that charges can "be verified and . . . relate back only so long as the charge is a viable one in the EEOC's files," such that "where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there is no longer a charge pending before the EEOC which is capable of being amended." *Balazs*, 32 F.3d at 157. Moreover, "[t]he Fourth Circuit's decision in *Balazs* . . . indicates that, unlike Title VII's timeliness requirements, non-compliance with the statute's verification requirement cannot be excused through application of equitable doctrines, even where the EEOC may share blame for the non-compliance." *Merchant's*, 948 F. Supp. 2d at 523.

[5] "The MFEPA 'is the state law analogue of Title VII.'" *Royster v. Gahler*, --- F. Supp. 3d ----, 2015 WL 9582977, at *4 (D. Md. Dec. 31, 2015) (quoting *Alexander v. Marriott Int'l, Inc.*, No. RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); citing *Haas v. Lockheed*

must allege sufficiently that (1) she "'engaged in protected activity,'" (2) her employer "'took adverse action against [her],'" and (3) "'a causal relationship existed between the protected activity and the adverse employment activity.'" *Westmoreland v. Prince George's Cnty., Md.,* 876 F. Supp. 2d 594, 612 (D. Md. 2012) (quoting *Price v. Thompson,* 380 F.3d 209, 212 (4th Cir. 2004)); *see Mason v. Montgomery Cnty.*, No. PWG-13-1077, 2015 WL 3891808, at *7 (D. Md. June 23, 2015). Defendant challenges the first and third elements. *See* Def.'s Mem. 18–19.

## Protected Activity

An employee engages in protected activity if she "oppose[s] any practice made an unlawful employment practice by [Title VII], or . . . ma[kes] a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3; *see Allen v. TV One, LLC*, No. DKC-15-1960, 2016 WL 337533, at *10 (D. Md. Jan. 28, 2016) (same). Discovery argues that Allen "has made no specific factual allegations that she engaged in any protected opposition activity, such as an internal protest or complaint that any of Discovery's actions or decisions were discriminatory based on a particular protected characteristic," complaining only of "'the difference in treatment and the hostile work environment.'" Def.'s Mem. 18 (quoting Am. Compl.). This is not so.

Plaintiff claims that, "[i]n 2010, Ms. Timberlake began creating a hostile work environment for Plaintiff," and she complained to Discovery's Human Resources department "in reference to Ms. Timberlake's behavior." Am. Compl. ¶ 10. Then, on February 15, 2012,[6] she "received an email from Ms. Timberlake outlining some concerns she had concerning Mrs. Allen's production" and providing statistics that "showed two male employees who were

*Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)). Therefore, I will analyze Allen's retaliation claims under federal and state law together.

[6] The email is dated February 13, 2012. Am. Compl. Ex. 3.

receiving many of the leads with high numbers and another male with similar sales generated as Plaintiff['s] alleged number." *Id.* ¶¶ 15–16. When "none of males, including the one with similar numbers, were contacted by Ms. Timberlake to 'get his[] numbers up' nor was he[] terminated for not having his numbers up[,] Plaintiff again made a complaint to Human Resources concerning the *difference in treatment* and the *hostile work environment*." *Id.* ¶ 16 (emphasis added).

"'An employee who opposes a hostile work environment is engaged in a 'protected activity' and cannot be retaliated against.'" *Young v. Giant Food Stores, LLC*, 108 F. Supp. 3d 301, 315 (D. Md. 2015) (quoting *Jordan v. Alt. Res. Corp.*, 458 F.3d 332, 351–52 (4th Cir. 2006) (King, J., dissenting), *majority overruled by Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264 (4th Cir. 2015)). Yet, Allen's threadbare allegation of a hostile work environment, without specifics as to Timberlake's actions or the animus behind it, cannot provide the basis for Allen's retaliation claim. *See Staten v. State of Md. Dep't of Labor, Licensing & Reg.*, No. RDB-07-3409, 2010 WL 1246036, at *4 (D. Md. Mar. 26, 2010) (concluding that plaintiff did not engage in protected activity by filing a grievance that "may have generally alleged unfair treatment, but . . . did not allege discrimination" because "[a] plaintiff's complaint to her employer . . . must be about unlawful employment practices that she reasonably believes are unlawful"; [f]iling a complaint is not protected activity when it fails to make any allegations about discrimination based upon a protected characteristic" (citation omitted)).

Nonetheless, Allen also alleges that she perceived that she was being treated differently from a similarly-situated male employee and complained to Human Resources about the perceived sex-based discrimination. *See* Am. Compl. ¶¶ 15–16. Although sparse, at the motion to dismiss stage, these allegations sufficiently describe the protected activity of complaining

about discrimination based on sex, which is a Title VII violation.  *See Allen*, 2016 WL 337533, at *10 (concluding that the plaintiff "sufficiently plead[ed] that she engaged in protected activity" when she "made oral and written complaints to Ms. Alston in the human resources department about [the defendant's founder and board member's] persistent harassment" and "gender discrimination").

### Causal Relationship

"Little is required to plead causation." *Autrey v. Maryland*, No. GLR-14-3064, 2016 WL 362502, at *5 (D. Md. Jan. 29, 2016) (citing *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998)).   A causal relationship "'exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity.'" *Johnson v. United Parcel Serv., Inc.*, No. RDB-14-4003, 2016 WL 4240072, at *6 (D. Md. Aug. 11, 2016) (quoting *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004)).

> In evaluating causation at the prima facie stage of the retaliation analysis, courts often consider: (1) whether the allegedly retaliatory actor was aware that the plaintiff had engaged in the protected activity at the time of the allegedly retaliatory act, and (2) the temporal proximity between the protected activity and the allegedly retaliatory act. *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (holding that a plaintiff had not established a prima facie case of retaliation where he had not shown that the allegedly retaliatory actors were aware of his protected activity); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (determining that a lengthy period of time between the employer becoming aware of the protected activity and the alleged adverse employment action negated any inference that a causal connection existed).

*Lewis v. Balt. City Bd. of Sch. Comm'rs*, No. CCB-14-3363, 2016 WL 2939695, at *5 (D. Md. May 20, 2016).   "Ordinarily, temporal proximity between the protected activity and the adverse action is sufficient to suggest causality." *Autrey*, 2016 WL 362502, at *5 (citing *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005)).

Discovery argues that Allen fails to "allege that Ms. Timberlake knew about her prior complaints to Human Resources, or, if she did know, how she knew of the complaints."  Def.'s Mem. 18.  To the contrary, Allen claims that "Ms. Timberlake was aware of Plaintiff's communication to HR."  Am. Compl. ¶ 18.  Discovery has not identified any case law that requires a plaintiff to plead "*how* [her supervisor] knew of the complaints."  *See* Def.'s Mem. 18 (emphasis added).

Discovery also contends that Allen has not alleged the causal connection sufficiently because her termination followed the alleged protected activity by "months, or even years," and "[a] significant break in time between the alleged retaliator learning of the protected activity and the alleged adverse employment action undermines any causal link between the two."  Def.'s Mem. 18 (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001)).

As noted, Allen claims that she received an email on February 15, 2012, and, upset with its contents, she "again made a complaint to Human Resources."  *Id.* ¶¶ 15–16.  Based on the fact that she received the email February 15, 2012 and took leave under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 – 2654, beginning on February 27, 2012, it is reasonable to infer that she made the complaint during the last two weeks of February, before she took leave.  She was terminated "soon after" June 6, 2012.  *See id.* ¶¶ 34–38.  Again, the Amended Complaint does not include the date.  Inferring that she engaged in the protected activity of complaining to Human Resources in late February, and was terminated in mid-to-late June, her termination followed the complaint by three and a half or four months.  "[T]he Supreme Court and the Fourth Circuit have repeatedly emphasized, temporal proximity must be 'very close' to show a causal connection," and "[o]n this reasoning, the Fourth Circuit has rejected gaps of as little as two months." *Johnson v. United Parcel Serv., Inc.*, No. RDB-14-

4003, 2016 WL 4240072, at *6–7 (D. Md. Aug. 11, 2016) (finding that "lengthy gap" of "nearly two months . . . far from indicating a causal connection, instead 'negates the inference of discrimination'" (quoting Price, 380 F.3d at 213); citing *Clark Cnty.*, 532 U.S. at 273; *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (no causation with two-month gap); *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (no causation with three- or four-month gap)); *see Lewis v. Baltimore City Bd. of Sch. Commissioners*, No. CCB-14-3363, 2016 WL 2939695, at *5 (D. Md. May 20, 2016) ("In order for temporal proximity alone to satisfy the causation prong of the prima facie case, the temporal proximity must be very close.").

But a plaintiff need not rely on temporal proximity alone to plead causation; "intervening events may demonstrate plausible retaliatory animus." *Bowman v. Balt. City Bd. of Sch. Comm'rs*, No. RDB-15-01282, 2016 WL 1159259, at *6 (D. Md. Mar. 24, 2016). In *Bowman*, "[a]pproximately three months passed between [the teacher/employee's] direct complaint to [the principal] alleging discriminatory treatment on October 13, 2014 and the placing of [the teacher] on administrative leave in January 2015." *Id.* This Court observed that, during those three months, "Bowman claims that she was relieved of Team Leader duties, other teachers were no longer sent to observe her room, and she allegedly received negative comments about her job performance." Reasoning that "[e]ach adverse action was plausibly in retaliation for her October 13th complaint," the Court concluded that the plaintiff had "alleged facts sufficient to show a causal link between her protected activity and the Board's adverse employment action." *Id.*

Likewise, here, between mid-February and Allen's termination, several events occurred that could be seen as retaliatory. First, Allen made a request to "leave the office early" and Allen's supervisor "responded negatively" and "more hostile[ly]" than before Allen made her

complaint to Human Resources.  Am. Compl. ¶¶ 17–18.  Second, "a meeting was held [with regard to] Plaintiff's sales numbers," while "[t]he other male employee whose numbers were allegedly as low did not have any such meeting."  *Id.* ¶¶ 19, 22.  Third, Allen was given "a 30 day performance improvement plan" and required to meet weekly with her supervisor and others. *Id.* ¶¶ 30, 31. Fourth, the figures in Plaintiff's "first progress report," on June 6, 2012, misrepresented Allen's performance relative to her colleagues, showing "55 sales . . . in the Account Management System and that from May 24- June 4, 2012 Plaintiff did not have a sale," when the sales "were, for the most part sales, not from Plaintiff's particular Multi System Operator but from another member."  *Id.* ¶¶ 34–37.

Moreover, it is noteworthy that, during the three- to four-months after Allen complained to Human Resources in February 2012 and before she was terminated in June 2012, Allen was out on FMLA leave from February 27, 2012 to May 18, 2012, such that she was only *in* the office a matter of weeks at most between making the complaint to Human Resources and being terminated.   Under these circumstances, I find that Allen sufficiently pleaded a causal relationship.  *See Bowman*, 2016 WL 1159259, at *6.

A plaintiff must "demonstrate not only a causal connection between his opposition and his termination, but that his opposition was the 'but for' cause of that termination." *Noel v. United Parcel Serv., Inc.*, No. PWG-13-1138, 2014 WL 4452667, at *8 (D. Md. Sept. 9, 2014) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nasser,* —— U.S. ——, ——, 133 S. Ct. 2517, 2534 (2013)).  Allen alleges, albeit indirectly, that her gender was the but-for cause of her termination: She claims that Discovery "used erroneous numbers as pretext" to terminate her for poor performance.  *See* Am. Compl. ¶¶ 34–39, 59, 64.  Consequently, Allen has stated a claim for

retaliation under either Title VII or the MFEPA.[7]  *See Wright*, 319 F. App'x at 234; *Dowe,* 145 F.3d at 657; *Noel*, 2014 WL 4452667, at *8.

## **ORDER**

  Accordingly, it is, this <u>16th</u> day of <u>August</u>, <u>2016</u>, hereby ORDERED that

1.  Defendants' Motion to Dismiss, ECF No. 16, IS GRANTED IN PART AND DENIED IN PART as follows:

    a.  Defendant's Motion to Dismiss IS GRANTED as to Counts I, II, V and VI; and

    b.  Defendant's Motion  IS DENIED as to Counts III and IV; and

2.  Defendant's Answer IS DUE on or before August 30, 2016.


                                   _____/S/_____
                                   Paul W. Grimm
                                   United States District Judge


dh/lyb

---

[7]  Because the protected activity on which this claim is based occurred in February 2012, Defendant's argument that "Plaintiff's Title VII, ADA, and FEPA allegations concerning events that allegedly occurred before November 16, 2011 are untimely and should be dismissed," Def.'s Mem. 11, is unavailing.