**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                  |     |                        |
| -------------------------------- | --- | ---------------------- |
|                                  |  *  |                        |
| **KENYA T. ALLEN,**              |     |                        |
|                                  |  *  |                        |
| **Plaintiff,**                   |     |                        |
|                                  |  *  |                        |
| **v.**                           |     | **Case No.: PWG-15-1817** |
|                                  |  *  |                        |
| **DISCOVERY COMMUNICATIONS,**    |     |                        |
| **LLC,**                         |  *  |                        |
|                                  |     |                        |
| **Defendant.**                   |  *  |                        |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenya T. Allen,[1] who worked as an Operation Specialist, processing sales for Defendant Discovery Communications, LLC ("Discovery") for eleven years,  filed suit against her former employer, alleging sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code. Ann., State Gov't §§ 20-601 *et seq.*, as well as failure to provide reasonable accommodations for her disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 – 12213, and the MFEPA.  Am. Compl., ECF No. 15.  Discovery moved to dismiss for lack of subject matter jurisdiction and failure to adequately plead claims.  Def.'s Mot., ECF No. 16.  On the record before me at the time, Allen failed to show that she filed a verified charge with the Equal Employment Opportunity Commission ("EEOC").  Because that deficiency left this Court without subject matter jurisdiction over her sex discrimination and failure to accommodate claims, I dismissed them on that basis without

---

[1] Plaintiff identifies herself in the Caption of her Amended Complaint as "Kenya T. Allen" and in the body of the Amended Complaint as "Kenyatta T. Allen."  ECF No. 15.

reaching the grounds Defendant raised in its motion.  Aug. 16, 2016 Mem. Op. & Order, ECF No. 19.  I did not dismiss Plaintiff's claims for retaliation, however.

Allen promptly moved for reconsideration of the dismissal of her sex discrimination and failure to accommodate claims, asserting that she erroneously failed to include the page containing her signature verifying the EEOC charge when she submitted her filings in this Court. ECF No. 20.  And she attached the missing page to her motion.  ECF No. 20-2.  In response to Allen's motion for reconsideration, Discovery raised the same arguments it raised—and I did not reach—in its motion to dismiss, arguing that dismissal was proper on these alternative grounds. ECF No. 25.  I held a conference call on September 20, 2016 with regard to Allen's motion. ECF No. 27.  I noted that the Fourth Circuit strongly favors the resolution of cases on the merits. *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010).  Therefore, even though I was not convinced that Allen met the standard under Fed. R. Civ. P. 54 for reconsideration of a ruling that is not a final judgment, given that the error was hers or her attorney's and not the Court's, I granted the motion.  ECF No. 28.

These counts still may be subject to dismissal on other grounds, however.  I informed the parties that I would reconsider Discovery's original arguments for dismissal of these four counts, as presented in its motion to dismiss and reply, ECF Nos. 16 and 18, as well as Allen's opposition to that motion, ECF No. 17.[2]  Having done so, I conclude that Allen failed to exhaust her administrative remedies as to some, but not all, of her discrimination claims, and an overlapping subset of her discrimination claims are untimely.  To the extent Allen has brought timely discrimination claims for which she has exhausted her administrative remedies, she has failed to state a claim.  Consequently, I once again must dismiss her discrimination claims.  But

---

[2] A hearing is not necessary.  *See* Loc. R. 105.6.

she has stated claims for failure to accommodate, and I will deny Discovery's motion as to these claims.

## STANDARD OF REVIEW

Discovery contends that "Plaintiff fails to allege adequately that she exhausted her administrative remedies," her "allegations concerning events that allegedly occurred before November 16, 2011 are untimely and should be dismissed," and she otherwise fails to state a claim.  Def.'s Mem. 9, 11, 13, ECF No. 16-1.  When a defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, asserting that "a complaint simply fails to allege facts upon which subject matter jurisdiction can be based," as Defendant does here for failure to exhaust administrative remedies, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a 12(b)(6) consideration."  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *see Lutfi v. United States*, 527 F. App'x 236, 241 (4th Cir. 2013); *Fianko v. United States*, No. PWG-12-2025, 2013 WL 3873226, at *4 (D. Md. July 24, 2013).  Thus, "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009); *see In re KBR, Inc., Burn Pit Litig.*, 925 F. Supp. 2d 752, 758 (D. Md. 2013) (quoting *Kerns*, 585 F.3d at 192).

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted."  *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). Similarly, "unsupported legal allegations need not be accepted." *Nam v. 2012 Inc.*, No. DKC-15-1931, 2016 WL 107198, at *3 (D. Md. Jan. 11, 2016) (citing *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989)). In an employment discrimination case such as this, the plaintiff "is not required to plead facts that constitute a *prima facie* case in order to survive a motion to dismiss," but "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* (quoting *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Notably, although at this stage of the proceedings, I accept the facts as alleged in Allen's Amended Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, I "may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument

that is an exhibit to a pleading is a part of the pleading for all purposes.").  Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

"'[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies.'" *Murphy v. Adams*, No. DKC-12-1975, 2014 WL 3845804, at *7 (D. Md. Aug. 4, 2014) (quoting *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013)).  "Modeled after Title VII . . . , the ADA incorporates that statute's enforcement procedures, including the requirement that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court." *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012) (citations omitted).  The MFEPA also "follow[s] the procedural requirements of Title VII," including the administrative exhaustion requirement.  *See Garey v. Wal-Mart Stores East, LP*, No. MJG-15-778, 2016 WL 1642945, at *2 (D. Md. Apr. 26, 2016).

To exhaust her administrative remedies for Title VII and ADA purposes, Allen must "bring [] a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  Under the MFEPA, she may exhaust her administrative remedies by filing a complaint with either the Maryland Commission on Human Relations or "'[a] complaint with a federal or local human relations commission within 6 months after the date on which the alleged discriminatory act occurred.'" *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 778 (D. Md. 2010) (quoting Md.

Code Ann., State Gov't § 20–1004(a), (c)).   Allen attached an EEOC Notice of Charge of Discrimination to her Amended Complaint, indicating that she filed an EEOC Charge of Discrimination ("EEOC Charge") on September 11, 2012.  Am. Compl. Ex. 8, ECF No. 15-1, at 30;[3] *see also* EEOC Charge, ECF No. 20-2 (copy of EEOC Charged signed on November 16, 2012); Fed. R. Civ. P. 10(c) (written instrument attached to complaint is part of pleading).

Additionally, in the EEOC Charge, Allen must have raised the claims that she now brings in federal court, as well as any claims that predate the EEOC Charge.  *See Hunter v. Vilsack*, No. DKC-07-2655, 2010 WL 1257997, at *8 (D. Md. Mar. 26, 2010) (quoting *Cherry v. Bealefeld*, No. CCB-08-1228, 2010 WL 917421, at *7 (D. Md. March 9, 2010)) (holding that rule from *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992), and *Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982)—that claims are exhausted if related to claims in an EEOC charge—does not apply if the claims "could have been raised in her EEOC charge, but were not" because a later-filed EEOC charge suggests that the plaintiff was not "reluctant to file additional charges for fear of further reprisal," and therefore the plaintiff should not be excused from exhausting administrative remedies for claims "that predate the filing of an EEOC charge"); *see also Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 303 (4th Cir. 2009).

In the EEOC Charge, Allen claimed that her supervisor "retaliated against [her] for filing a hostile work environment complaint" and "discriminated against [her on the basis of] sex by giving a man with less seniority and experience [her] sales contract in 2011" and "subject[ing] her] to disciplinary and probationary actions" when men who were "low performing sales people" were not subjected to such actions.  EEOC Charge ¶¶ I, III.  She also claimed that her supervisor and Discovery "failed to provide reasonable accommodations for [her to] perform

---

[3] Allen's Exhibits to her Amended Complaint all appear as one electronic document, ECF No. 15-1.

[her] duties as an employee upon returning back to work in May of 2012," because they did not

"put[] [her] in a different department or less stressful department," as her "physician requested."

*Id.* ¶ II.

> According to Discovery, the EEOC Charge did not encompass
>
> Plaintiff's claims that: (a) Ms. Childress and/or Ms. Timberlake harassed her in 2010 (and, to the extent the Court considers Compl. Ex. 1 to be incorporated by reference, any allegations of harassment in 2009); (b) she made a complaint to Ms. Coyne in August 2010; and (c) she discussed an unspecified "concern" and the number of her accounts with Ms. Timberlake on October 21, 2011[.]

Defs.' Mem. 10–11.  Allen does not disagree (and would have no basis for doing so).  Instead,

she relies on Discovery's Position Statement before the EEOC, *see* Def.'s Position Stmt., Pl.'s

Opp'n Ex. 1, ECF No. 17-2, to insist that Defendant "was placed on notice of Plaintiff's claim"

and therefore, in her view, she exhausted her administrative remedies.  Pl.'s Opp'n 3.[4]  Allen

cites *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005), in which the Fourth Circuit

observed that "an administrative charge notifies the employer of the alleged discrimination,"

which "gives the employer an initial opportunity to voluntarily and independently investigate and

resolve the alleged discriminatory actions" and "prevents the employer from later complaining of

prejudice, since it has known of the allegations from the very beginning," and the charge also

"initiates agency-monitored settlement."  But *Chacko* did not hold that, with proof of notice,

exhaustion of administrative remedies is not required, and Allen has not identified any other case

law to that effect.

Even if Discovery's purported notice were sufficient to obviate Allen's need to exhaust

administrative remedies, the Position Statement simply does not show that Discovery had notice

---

[4] Defendant does not challenge whether this document may be considered on a motion to dismiss as "integral to the complaint," insofar as Allen argues that it establishes this Court's jurisdiction. *See Sposato*, 2013 WL 1308582, at *2.

of any of these claims.  In arguing that "Discovery did not discriminate against Ms. Allen on the basis of her sex" in its Position Statement, Discovery discussed Allen's "2011 claim" that a "sales contract . . . was taken away from Ms. Allen" and her "2012 claim" that "she was placed on the performance plan." Def.'s Position Stmt. 2, 9–10.  Discovery did not mention alleged harassment by either Childress or Timberlake, an August 2010 complaint to Coyne, or Allen's October 2011 discussion with Timberlake.  Therefore, these claims are unexhausted.  *See Hunter*, 2010 WL 1257997, at *8; *Cherry*, 2010 WL 917421, at *7.

### TIME-BARRED CLAIMS

Under Title VII, discrimination claims in Maryland must be filed with the EEOC no later than 300 days after the alleged discriminatory conduct. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 428 (4th Cir. 2004); *Abdi v. Giant Food, LLC*, No. PWG-14-2988, 2016 WL 808775, at *4 (D. Md. Mar. 2, 2016).  Allen originally filed her claims with the EEOC on September 11, 2012.  Notice of Charge, ECF No. 15-1, at 30.[5]  November 16, 2011 was 300 days prior to September 11, 2012.  Yet, Allen alleges actions beginning in 2010 in support of her discrimination claim. Am. Compl. ¶¶ 10–13.

As best I can discern, Plaintiff attempts to invoke the continuing violation theory by arguing that "the taking away of accounts was a continuous action." Pl.'s Opp'n 4.  It is true that the Fourth Circuit previously held that this theory applied to discriminatory and hostile work environment claims alike, such that "[i]ncidents outside of the statutory window" were not time-barred if they "related to a timely incident as a 'series of separate but related acts' amounting to a continuing violation." *Beall v. Abbott Labs.*, 130 F.3d 614, 620 (4th Cir. 1997) (quoting *Jenkins*

---

[5] Plaintiff asserts that she filed her charge of discrimination on September 18, 2012.  But, careful examination of the Notice of Discrimination reveals that she filed her charge on September 11, 2012, and the EEOC notified Discovery on September 18, 2012.  Notice of Charge.

*v. Home Ins. Co.*, 635 F.2d 310, 312 (4th Cir. 1980) (per curiam)).  But, the Supreme Court differentiated hostile environment claims from claims of "discrete acts" of discrimination in *National Railroad Passenger Corp. v. Morgan*, holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. 101, 113 (2002); *see also Green v. Brennan*, 136 S. Ct. 1769, 1781 n.7 (2016) (noting that *Morgan* held that, "unlike a hostile-work-environment claim that may comprise many discriminatory acts, discrete claims of discrimination based on independent discriminatory acts cannot be aggregated to extend the limitations period"); *Smith v. Vilsack*, 832 F. Supp. 2d 573, 581 (D. Md. 2011) ("[T]he 'continuing violation' theory, which 'allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination,' . . . only applies . . . when an employee asserts a hostile work environment claim." (quoting *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007))); *Mallik*, 964 F. Supp. 2d at 541 (same).

While Allen alleges retaliation for her earlier administrative complaint of a hostile work environment, she pointedly has conceded that does not make a hostile work environment claim in this Court, instead focusing her discrimination claims on discrete acts.  *See* Am. Compl. ¶¶ 44–55; Pl.'s Opp'n 5 ("Concerning the hostile work environment claim, Plaintiff has alleged no such cause of action/count.").[6]  Thus, Allen's invocation of the continuing violations theory with regard to her claims of discrimination is unavailing.  *See Morgan*, 536 U.S. at 113; *Green*, 136 S. Ct. at 1781 n.7.    Consequently, to the extent that Allen's Amended Complaint raises

---

[6] Because Allen does not purport to state a claim for hostile work environment, I need not address Defendant's argument that, "[a]lthough Plaintiff mentions the phrase 'Hostile Work Environment' in her Amended Complaint, she does not allege hostile work environment as a claim and has not set forth any factual allegations supporting such a claim."  Def.'s Mem. 14.

discrimination claims based on actions occurring prior to November 16, 2011, those claims are dismissed as time-barred.

## FAILURE TO STATE A CLAIM

### Discrimination

In considering Allen's sex discrimination claims, I will disregard the time-barred and unexhausted claims, such as that Timberlake "took away her major accounts" at some point prior to October 21, 2011.  Am. Compl. ¶¶ 12–13.  What remain are Allen's allegations that in February 2012, Timberlake emailed her "outlining some concerns she had concerning Mrs. Allen's production," but had no "data backing up her assertions as to how she reached them," and did not contact the "male with similar sales generated as Plaintiff . . . to 'get his[] numbers up' nor was he[] terminated for not having his numbers up."  *Id.* ¶¶ 15–16.  She claims that she had to meet with Timberlake, Vice President of Operations Alwin Alleyne, and a Human Resources representative with regard to her "sales numbers," while the male employee with similar sales did not.  *Id.* ¶¶ 19–22.  She also claims that she "was instructed not to ask her team for help on matters and to refer only to her operations manual or to Ms. Timberlake," while "[t]his was not . . . required of any other employees."  *Id.* ¶ 33.

To state a claim for sex discrimination under Title VII or the MFEPA,[7] Allen must allege "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) less favorable treatment than similarly situated employees outside

---

[7] "The MFEPA 'is the state law analogue of Title VII.'"  *Royster v. Gahler*, 154 F. Supp. 3d 206, 215 (D. Md. 2015) (quoting *Alexander v. Marriott Int'l, Inc.*, No. RWT-09-02402, 2011 WL 1231029, at *6 (D. Md. Mar. 29, 2011); citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)).  Therefore, I will analyze Allen's discrimination claims under federal and state law together.

the protected class." *Linton v. Johns Hopkins Univ. Applied Physics Lab., LLC,* No. JKB-10-276, 2011 WL 4549177, at *5 (D. Md. Sept. 28, 2011) (citing *White v. BFI Waste Servs.,* 375 F.3d 288, 295 (4th Cir. 2004)); *see also Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Discovery asserts, *inter alia*, that Plaintiff "does not contend that her job performance was satisfactory." Def.'s Mem. 15.

Allen claims that she "always excelled at meeting" her "sales goals on a yearly basis" and "was one of the highest sales person[s] in the department prior to 2011." Am. Compl. ¶ 8. She also claims that she "had a stellar performance record while employed at Discovery" and "never had a problem with her performance until her then manager Stephanie Timberlake began a campaign of harassment and retaliation . . . [i]n 2010." *Id.* ¶¶ 9–10. Essentially, she alleges that she had a better-than-satisfactory performance before some point in 2010, and, she concedes that beginning in 2010, she "had a problem with her performance." Thus, she admits that when the remaining allegedly discriminatory acts occurred (after November 16, 2011), she "had a problem with her performance."[8]

Moreover, she attaches to her pleading a February 10, 2012 email that Timberlake sent to the "team" consisting of Allen, another woman, and three men, in which Timberlake listed the number of "individual site network launches" each team member processed in January: 341 (a man), 303 (a man), 180 (a woman), 155 (a man), and 128 (Allen). Pl.'s Am. Compl. Ex. 2, ECF No. 15-1, at 15; *see also* Fed. R. Civ. P. 10(c) (written instrument attached to complaint is part of pleading). Thus, Allen's sales figure was lowest, although the male comparator processed only 27 more launches than she.

---

[8] Allen appears to attribute her decreased performance to Timberlake taking away "her major accounts." Am. Compl. ¶¶ 12–13. But, this untimely claim is not before the Court.

Further, although Allen challenges the accuracy of the figures Timberlake used to support her concerns with Allen's performance, she has not pleaded any facts from which I reasonably can infer satisfactory job performance.   Instead, the reasonable inference I can make is that Allen's job performance was not satisfactory.   In the February 13, 2012 email from Timberlake to Allen that appears in Exhibit 3 to the Amended Complaint, Timberlake wrote that she and Allen had "discussed [Allen's] launch statistics numerous times including suggestions on how to improve [her] numbers," suggesting that January 2012 was not Allen's only low month.   ECF No. 15-1, at 17.   Timberlake also noted:

> In the past month there was also an instance of you launching HD simulcast networks via transport without the transport amendment status being Fully Executed for Scott Telcom, site 35074 agreement 14436. As you know this is not acceptable and does not fall in line with our launch procedures. One of the first things you should do prior to launching a network is verify the agreement is in the proper status. Now there are several HD simulcast launches in AMS with this incorrect information. You were notified of your error on January 30th, but I have not received any follow up from you and the launches are still in AMS, this creates a billing issue.

*Id.*   The only response Allen attached was her February 15, 2012 email to Timberlake in which she said that she "[w]anted to acknowledge that [she] received [Timberlake's] email and will respond to [her] concerns shortly."   *Id.*

Additionally, Timberlake stated:

> I have also noticed an increase in phone usage, not coming from the inbound group ring.  As you know we are on an acd line and in order for you to receive your share of the inbound group ring calls, your line needs to be free to accept calls. Please decrease your phone usage and focus on your production and the accuracy of your work.
>
> During the next thirty days, you need to demonstrate significant improvement in your performance.

ECF No. 15-1, at 18.   Based on the pleadings, which include these emails as exhibits, *see* Fed. R. Civ. P. 10(c), and do not include any evidence to the contrary, there are no factual allegations in the Amended Complaint or its incorporated exhibits that would support an allegation that Allen's

job performance was satisfactory. Consequently, she fails to state a claim for discrimination, and her claims must be dismissed with prejudice.[9]  *See Nam*, 2016 WL 107198, at \*3; *see also Iqbal*, 556 U.S. at 678; *Coleman*, 626 F.3d at 190; *Linton*, 2011 WL 4549177, at \*5.

### Failure to Accommodate

To state a claim for failure to accommodate under the ADA, Allen must allege "(1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of [her] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 387 n.11 (4th Cir. 2001) (citation omitted).  In addition to being the Maryland analogue to Title VII, "the MFEPA has been labeled the 'Maryland State analogue to the ADA.'" *Townes v. Md. Dep't of Juvenile Servs.*, No. JKB-15-1093, 2015 WL 5928114, at \*7 (D. Md. Oct. 8, 2015) (quoting *George v. Md. Dep't of Corr. Serv.*, No. WMN-14-2808, 2015 WL 847416, at \*4 n.5 (D. Md. Feb. 25, 2015), *aff'd*, No. 15–1323, 2015 WL 5236796 (4th Cir. Sept. 9, 2015) (mem.)).  The state and federal statutes diverge, however, with regard to how an employer is required to respond to a request for an accommodation.  *See id.*

> The ADA imposes upon employers a good-faith duty "to engage [with their employees] in an interactive process to identify a reasonable accommodation."

---

[9] When Discovery sought leave to file its motion to dismiss, it identified the deficiencies it perceived in Allen's original complaint.  ECF No. 10.  I gave Allen the opportunity to amend to address those deficiencies before Defendant moved to dismiss. ECF No. 14.  Allen filed her Amended Complaint and Discovery filed its motion, identifying the same deficiencies. Allen failed to cure the deficiencies with regard to her discrimination claims, suggesting that further amendment would be futile.  *See McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation." (internal citation omitted)). Therefore, the dismissal shall be with prejudice.  *See id.*

> This duty is triggered when an employee communicates her disability and desire for an accommodation—even if the employee fails to identify a specific, reasonable accommodation. However, an employer will not be liable for failure to engage in the interactive process if the employee ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position.

*Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 581 (4th Cir. 2015) (quoting *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 346 (4th Cir. 2013)).   "Maryland regulations require 'an *individualized assessment* by the employer of the employee's abilities to perform the essential functions of a job,' a process according 'stronger protection for the employee than the federal "interactive process" regulation.'"   *Townes*, 2015 WL 5928114, at *7 (quoting *Adkins v. Peninsula Reg'l Med. Ctr.*, 119 A.3d 146, 164 (Md. Ct. Spec. App. 2015); citing Md. Code Regs. 14.03.02.04(B)(3)).

Discovery argues for dismissal on the basis that Plaintiff "has not alleged that she is an individual with a 'disability' as defined by the ADA" because she fails to specify anything beyond "physical and emotional anguish." Def.'s Mem. 16.   Allen insists that "Exhibit [sic] provides more than enough detail as to Plaintiff's disability."   Pl.'s Opp'n 7.   It appears she refers to Exhibit 7, a May 7, 2012 letter from her physician, Wendy Spencer, M.D., who was "board certified in psychiatry."   Spencer Ltr., Pl.'s Am. Compl. Ex. 7, ECF No. 15-1, at 27.   In Discovery's view, Dr. Spencer's statement that Allen's disability was "'brought on by work stressors with her interactions with her immediate supervisor,'" still does not allege a disability for purposes of the ADA because "an employee who is merely unable to work under a certain supervisor because of anxiety and stress related to that supervisor is not 'substantially limited' in her ability to work and is therefore not disabled under the ADA."   Def.'s Mem. 16 (quoting Spencer Ltr.).

The relevant ADA definition of disability is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). The ADA identifies "working" among other "major life activities." 42 U.S.C. § 12102(2); *see also Pisani v. Baltimore City Police,* No. WDQ–12–1654, 2013 WL 4176956, at *7 (D. Md. Aug. 14, 2013) (quoting 42 U.S.C. § 12102(2)).  "An impairment 'substantially limits' one of these activities if the plaintiff is 'significantly restricted' in that activity." *Wonasue v. Univ. of Md. Alumni Ass'n,* 984 F.Supp.2d 480, 488 (D.Md.2013) (quoting *White v. Home Depot, U.S.A., Inc.,* No. DKC–13–624, 2013 WL 4501328, at *3 (D. Md. Aug. 21, 2013)); *see also Pollard v. High's of Balt., Inc.,* 281 F.3d 462, 467 (4th Cir. 2002); 29 C.F.R. § 1630.2(j)(1).

Allen's pleadings, which incorporate Dr. Spencer's letter, state that Allen was referred to Dr. Spencer by her primary care physician, who believed Allen was experiencing "depressed mood, panic attacks with palpitations, hyperventilation, and feelings of impending doom, as well as generalized anxiety[,] [a]ll . . . brought on by work stressors with her interactions with her immediate supervisor."  ECF No. 15-1, at 27.  Dr. Spencer then diagnosed her with

> Major Depressive Disorder with symptoms of depressed mood, anergia, anhedonia, decreased appetite with a 24 pound weight loss in six months, hopelessness, helplessness;[] decreased concentration, decreased sleep and early morning awakening as well as diurnal mood variation-mornings worse than evenings all consistent with depression[]; Panic Disorder with agoraphobia and Generalized Anxiety Disorder.

*Id.*  Dr. Spencer did not state that these diagnoses were tied to her interactions with her supervisor.  *See id.*  Allen was not working because of her symptoms, and Dr. Spencer recommended "reasonable accommodations" at Allen's place of employment "for a medically safe return to work," because she "fear[ed] [Allen would] relapse once adequately treated if these accommodations are not put into place."  *Id.* at 27-28.  Additionally, in the Return to Work Certification, although Dr. Spencer approved Allen for "full, regular workload with no

restrictions," she stated that Allen was "returning to work AMA (against medical advice)."  Pl.'s

Am. Compl. Ex. 6, ECF No. 15-1, at 25.   Thus, Allen more than sufficiently has alleged

"physical or mental impairment[s]" (Major Depressive Disorder, Panic Disorder, and

Generalized Anxiety Disorder) that "substantially limit" (by requiring her to be out work and

making a return to work against the advice of her physician) a "major life activit[y]" (work).  *See*

42 U.S.C. § 12102(1); *Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 484 (D. Md. 2015);

*Wonasue,* 984 F. Supp. 2d at 488. Consequently, she adequately alleged that she has a disability

within the meaning of the statute. *See Rhoads*, 257 F.3d at 387 n.11; *Wilson*, 121 F. Supp. 3d at

484.

As for whether Discovery failed to make reasonable accommodations that Allen

requested, Allen alleges:

> Prior to Plaintiff returning from medical leave, her Psychiatrist, Dr. Spencer, had
> requested that Plaintiff be given reasonable accommodations in the form of
> moving her to a different department. (See Exhibit 6) Despite having more than
> 500 employees and several departments that Plaintiff could have been moved to,
> Defendant refused to comply with this reasonable accommodation[] and did not
> provide any reasonable accommodations.
>
> . . .
>
> . . . Plaintiff, through her physician's recommendations, requested reasonable
> accommodations from the Defendant.
>
> . . . Defendant failed to provide Plaintiff reasonable accommodations thus violated
> the ADA [and the MFEPA].

Am. Compl. ¶¶ 28, 68, 69; *see id.* ¶¶ 73-74.  Defendant argues:

> both Exhibits 6 and 7 directly contradict Plaintiff's allegation that "her
> Psychiatrist, Dr. Spencer, had requested that Plaintiff be given reasonable
> accommodations in the form of moving her to a different department." . . . Dr.
> Spencer merely recommended, in conclusory form, that "reasonable
> accommodations be instituted for a medically safe return to work."

Def.'s Mem. 17.  Discovery's characterization of Dr. Spencer's recommendation is accurate, and

where the allegations in the complaint conflict with an attached written instrument, "the exhibit

prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991). Consequently, Allen has not alleged that she requested a particular accommodation, and therefore Discovery could not have refused it. But, significantly, as Defendant acknowledged, in the letter attached to the Return to Work Certification, what Dr. Spencer recommended was that "reasonable accommodations be instituted for a medically safe return to work." Spencer Ltr., ECF No. 15-1, at 28. This non-specific request is enough to trigger Discovery's "good-faith duty 'to engage [with Allen] in an interactive process to identify a reasonable accommodation.'" *Jacobs*, 780 F.3d at 581 (quoting *Wilson*, 717 F.3d at 346). Although Discovery "will not be liable for failure to engage in the interactive process if [Allen] ultimately fails to demonstrate the existence of a reasonable accommodation that would allow her to perform the essential functions of the position," *see id.*, Allen sufficiently alleged that she requested "reasonable accommodations," and Discovery did not provide any accommodations, and that is all that is required at this stage under the ADA or the MFEPA. *See id.*; *Rhoads*, 257 F.3d at 387 n.11; *Townes*, 2015 WL 5928114, at *7. Therefore, I will deny Discovery's motion as to Allen's failure to accommodate claims.

## **ORDER**

Accordingly, it is, this <u>28th</u> day of <u>September</u>, <u>2016</u>, hereby ORDERED that

1. Having reconsidered Defendant's Motion to Dismiss, ECF No. 16, with regard to Plaintiff's sex discrimination and failure to accommodate claims only,[10] the Motion IS GRANTED IN PART AND DENIED IN PART as follows:

   a. Defendant's Motion IS GRANTED as to Counts I and II; and

   b. Defendant's Motion IS DENIED as to Counts V and VI;

---

[10] I previously denied the Motion with regard to Plaintiff's retaliation claims, Counts III and IV. ECF No. 19. This Order does not affect that ruling.

2.   Plaintiff's discrimination claims, Counts I and II, ARE DISMISSED;

3.   This case will proceed on Plaintiff's retaliation claims, Counts III and IV, and Plaintiff's failure to accommodate claims, Counts V and VI;

4.   Defendant has filed an Answer with regard to Allen's retaliation claims, ECF No. 22;

5.   Defendant's Amended Answer with regard to Allen's failure to accommodate claims IS DUE on or before October 13, 2016.

_____/S/_____
Paul W. Grimm
United States District Judge

lyb